**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1024
_____

BRYAN GRANELLI;
JACQUELINE GRANELLI,
f/k/a JAQUELINE HOEY,
Appellants

v.

CHICAGO TITLE INSURANCE COMPANY,
a/k/a  CHICAGO TITLE OF NEW JERSEY, INC.,
FIDELITY NATIONAL TITLE OF NEW JERSEY, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-10-cv-02582)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 6, 2013

Before:   GREENAWAY, JR., VANASKIE, and ROTH, *Circuit Judges.*

(Filed: June 17, 2014 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

After several attempted sales of their home were thwarted by title defects, Bryan

and Jacqueline Granelli brought this action against the title insurer for their property,

Chicago Title Insurance Company ("Chicago Title"). Following the commencement of this litigation, Chicago Title resolved all of the title defects in the Granellis' favor through a state court quiet title proceeding. Nevertheless, the Granellis allege that Chicago Title breached the insurance contract by failing to uncover obvious title defects through a reasonable title search at the time of the home purchase. The Granellis also argue that Chicago Title's efforts to cure the title defects once they were discovered were not prompt and reasonable, as they took a total of three years, due in large part to Chicago Title's delay in bringing a quiet title action until twenty months after the Granellis filed their claim.

The Granellis sought damages, claiming breach of contract, breach of the duty of good faith and fair dealing, detrimental reliance, and violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 (West 1976). The District Court granted Chicago Title's motion for summary judgment and dismissed all of the Granellis' claims. We will vacate the District Court's summary judgment ruling as to the reasonableness of Chicago Title's efforts to cure the title defects and affirm the remainder of the District Court's ruling.

## I.

In March 1998, Jacqueline Granelli—at the time, Jacqueline Hoey—acquired a parcel of real property located at 221 Summit Drive, Boonton, New Jersey ("the Boonton property"), along with her then-boyfriend, John Thompson. In connection with the purchase of the property, the two obtained a residential title insurance policy from Chicago Title in the amount of $137,000. The two subsequently separated, with her

2

retaining possession of the property. She later married Bryan Granelli, who moved into the Boonton property in 2001.[1]

The Granellis first listed the Boonton property for sale in 2005. Sometime in 2007, the Granellis became aware of a boundary line dispute with their neighbor, Keith Brown, when Brown called police officers to the property after the Granellis attempted to install a French drain on what Brown maintained was his property. In late 2007, before selling the Boonton property, the Granellis purchased a second home ("the Kearney property"), which they moved into in early 2008. The Granellis believed that they would only retain possession of the Boonton property for several months following their acquisition of the Kearney property.

In June 2008, the Granellis entered into a contract to sell the Boonton property. The purchaser began moving her possessions into the home, but subsequently backed out of the sale after finding she could not clear good title due to several boundary and land ownership disputes, including the dispute with Brown and another dispute with Boonton Township.

In August 2008, the Granellis filed a claim with Chicago Title seeking resolution of these disputes. The claim was initially assigned to Jason Bergman at Fidelity National Title Group.[2] In the following months, Fidelity underwent restructuring that included the closing of the New York claims center and the transfer of all claims to Fidelity's offices

---

[1] Jacqueline Granelli is a named beneficiary of the title policy; Bryan Granelli is not a beneficiary listed on the policy.

[2] Chicago Title is a subsidiary of Fidelity National Title Insurance Company.

in Omaha, Nebraska.  On February 2, 2009, Fidelity employee Shawn Grimsley informed Bryan Granelli that the claim had been transferred from Bergman to him.

Fidelity made a final coverage determination in May 2009, nine months after the Granellis' claim had been filed.  Chicago Title subsequently sent letters to adjoining property owners in an attempt to reach a resolution of the boundary disputes.  The parties dispute when Attorney Brian Romanowsky was first assigned to the claim.  The District Court accepted Chicago Title's assertion that Romanowsky began working on the claim in May 2009, at which time Fidelity determined it would be necessary to bring a quiet title action to resolve the boundary disputes.  The Granellis allege Romanowsky was not assigned to the matter until November 2009, fifteen months after the Granellis first filed their claim.  Chicago Title brought a quiet title action to resolve the boundary disputes in April 2010, twenty months after the Granellis filed their claim.

The quiet title litigation was concluded in August 2011, with all boundary disputes resolved in the Granellis' favor.  The Granellis allege, however, that the disputes pertaining to the Boonton property precluded them from selling their home during the three-year pendency of the title insurance claim.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of the District Court's grant of summary judgment is plenary.  *Anderson v. Consol. Rail Corp*., 297 F.3d 242,  246 (3d Cir. 2002).  Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.

A.

The Granellis argued before the District Court that the Defendants had breached "the terms of the contract to provide 'good title' to Jacqueline Granelli at the time of her purchase of the subject property on March 10, 1998." (App. 468). The District Court concluded that plaintiff's breach of contract argument failed.

New Jersey law requires that, before issuing a title insurance policy, title insurers perform a "a reasonable examination of the title" and render "a determination of insurability of title in accordance with sound underwriting practices for title insurance companies." N.J. Stat. Ann. § 17:46B-9 (West 1976). New Jersey courts have interpreted this statutory provision to mean that "a title company's liability is limited to the policy and . . . the company is not liable in tort for negligence in searching records." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 562 A.2d 208, 218 (N.J. 1989). Although a title insurer is not liable in tort for failing to conduct a reasonable title search, it may be liable under a breach of contract theory, depending on the terms of the policy in question. *Id.* If "the title company agrees to conduct a search and provide the insured

with an abstract of title in addition to the title policy, it may expose itself to liability for negligence as a title searcher in addition to liability under the policy."[3] *Id.*

Because a title insurer can only be liable for a negligent title search under a breach of contract theory, plaintiffs asserting such a theory bear the burden of presenting evidence tending to demonstrate that such a contractual relationship existed. *See, e.g. Stewart Title Guar. Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 384 (D.N.J. 1999) (concluding that an insured could not "pursue a claim for breach of contract [to perform a reasonable title search and provide abstract of title] where it has failed to set forth any evidence demonstrating the existence of a contract."). The Granellis have failed to point to any evidence establishing that Chicago Title undertook an independent contractual duty to "provide the insured with an abstract of title in addition to the title policy." *Walker Rogge, Inc.*, 562 A.2d at 218. Accordingly, the District Court did not err in dismissing this claim at summary judgment.

B.

The Granellis also argued before the District Court that Chicago Title had breached the title insurance contract by not curing the title defects in a prompt and reasonable manner. The District Court concluded that Defendants' actions in curing the defect:

---

[3] An "abstract of title" is defined by Black's Law Dictionary as "a concise statement, usu. prepared for a mortgagee or purchaser of real property, summarizing the history of a piece of land, including all conveyances, interests, liens, and encumbrances that affect title to the property." *Black's Law Dictionary* 10 (9th ed. 2009).

were reasonable, throughout the claim investigation. It hired all necessary parties, exhausted all non-legal outlets for resolution of the issue, and when it became clear the issue would have to be resolved in court, it went forward at its own expense. Despite Plaintiffs' desire for an immediate remedy the title insurance company is not required to proceed immediately into litigation. It is within its right to assess the situation and pursue alternative resolutions to the dispute that do not involve legal proceedings.

(App. 8-9.)

The quiet title litigation action, however, was not initiated until almost twenty months after the Granellis first filed their complaint with Chicago Title in August of 2008. The District Court found that Chicago Title's claims examiner had determined in May 2009 that it "would be necessary to bring a quiet title action to resolve the boundary disputes," yet Chicago Title did not file a quiet title action on behalf of the Granellis until April 2010. (App. 5).

In *Stewart Title*, the District Court addressed a similar claim of unreasonable delay in the resolution of a title insurance claim. 58 F. Supp. 2d at 382-84. Although the title insurance company in that case argued that it "satisfied any obligations it had under the policy by instituting an action to cure the defect," the District Court found that there was a genuine dispute of material fact as to whether it had done so "in a reasonably diligent manner," as it had contracted in the policy. *Id*. at 382. The insured had presented some evidence establishing that the insurer had been aware of the defect in April 1996 when it first issued the title policy and knew in February 1997 that the defect meant the insured property owners did not possess title to a portion of the property. *Id*. The insurer took no action until it filed a quiet title suit on August 27, 1997. *Id*. Although the insurer

7

disputed when it became aware of the title defect, the District Court concluded that the insured's allegation that the insurer had waited sixteen months after becoming aware of a title defect before filing a quiet title action was sufficient evidence to defeat the insurer's motion for summary judgment on the issue of reasonable diligence. *Stewart Title*, 58 F. Supp. 2d at 382-84.

Although we are not bound by *Stewart Title*, we find its reasoning persuasive.[4] Unlike in *Stewart Title*, there is no dispute as to when the insurer first became aware of the existence of title defects on the insured property. Chicago Title took twenty months from the date the Granellis filed their claim in August of 2008 to institute a quiet title action—four months longer than the delay in *Stewart Title*. This delay creates a strong inference that Chicago Title failed to act with reasonable diligence in curing the Granellis' title defects. Although a factfinder might ultimately find that Chicago Title acted reasonably in pursuing non-litigation strategies during the twenty months after receipt of the Granellis' claim, a reasonable factfinder could also conclude that Chicago Title was not acting with due diligence.

---

[4] We note that the terms of the policy at issue here may be different than the terms of the policy examined in *Stewart Title*. The precise terms of the Granellis' title insurance policy are not before us in this appeal, however, because the District Court found that Chicago Title was not in breach by concluding that its "actions [in curing title] were prompt and reasonable" as a matter of law. (App. 9.) We vacate because we believe the District Court was in error to conclude that there was no genuine dispute of material fact as to whether Chicago Title resolved the Granellis' claim in a prompt and reasonable manner. We leave the determination of whether Chicago Title had a contractual duty to cure the title defects in a diligent manner for the District Court to consider on remand.

In addition to the inference raised by the length of the delay, the Granellis have pointed to some evidence from which a jury could find that at least a portion of the delay was the product of negligence rather than a calculated strategy for prompt claim resolution by means other than litigation. During his deposition, David LaPlante, who supervised the handling of the Granellis' claims for Fidelity, testified to the following:

> Q: Okay. Do you know why it took approximately 18 months to get to the point where a lower court action was filed to quiet title on this property?
> A: Based on my review of the file, yes, I can provide an answer.
> Q: Okay. Please do.
> A: There was a major restructuring done in December of 2008. The New York claim center was shut down. It appears from my review of the file the claims counsel in New York had numerous conversations with Mr. Smith, the surveyor, and was properly investigating the claim and maintaining communication with the insured.
> In late—in December '08 the entire New York claims center was shut down and there was a company reorganization. There were several bankruptcies if you recall at that time. Commonwealth went under. And there was a very large restructuring."

(App. 196.)

LaPlante's testimony indicates that Fidelity's internal restructuring during the period after the Granellis filed their claim affected the length of time Chicago Title took to bring a quiet title action on the Granellis' behalf. Although Chicago Title contended before the District Court that the delay in bringing the quiet title action was due to the pursuit of non-litigation alternatives to resolving the claim, LaPlante's testimony indicates he believed at least a portion of the delay was attributable to Fidelity's internal reorganization. The combination of this testimony and the inference raised by the twenty

9

months it took Chicago Title to file the quiet title action after receiving the Granellis'

claim suffices to create a genuine dispute as to whether Chicago Title's handling of the

Granellis' claim was reasonably prompt.  Therefore, we will vacate the District Court's

grant of summary judgment to Chicago Title on this claim.

C.

The Granellis next assert that the District Court erred in finding that Chicago Title

had not breached the duty of good faith and fair dealing in their handling of the claim.

We agree with the District Court that Plaintiffs have not offered any evidence of conduct

by Chicago Title that would constitute bad faith.

Under New Jersey law, "an insurance company owes a duty of good faith to its

insured in processing a first-party claim." *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J.

1993).  "The implied covenant is an independent duty and may be breached even where

there is no breach of the contract's express terms." *Black Horse Lane Assoc., L.P. v. Dow

Chemical Corp.*, 228 F.3d 275, 288 (citations and quotation marks omitted).

In *Pickett*, the New Jersey Supreme Court addressed a factual scenario analogous

to the one at issue here.  There, an insured truck driver brought an action against his

insurer alleging that the insurer's failure to promptly pay a valid claim constituted a

breach of the duty of good faith and fair dealing.  621 A.2d at 449-50.  The court

recognized that a situation involving "inattention to payment of a valid, uncontested

claim" presented a "more difficult application of the [bad faith] standard" than a case

presenting "a denial or refusal to pay a claim," but that the test was "essentially the same"

in both instances.  *Id*. at 454.  In a delay case, "[b]ad faith is established by showing that

10

no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay." *Id*. at 457. The New Jersey Supreme Court noted that a claim being delayed while lost in a computer system would not constitute bad faith under this standard, as "[n]either negligence nor mistake is sufficient to show bad faith." *Id*. at 454 (citing *Blue Cross & Blue Shield v. Granger*, 461 So. 2d 1320, 1327-28 (Ala. 1984)).

The Granellis have not presented any evidence that Chicago Title acted in "bad faith" under this standard. The Granellis point to the previously-discussed deposition testimony by LaPlante that indicated Fidelity's restructuring during this period may have been responsible for some of the delay in making a coverage determination.[5] This type of delay does not constitute bad faith, but instead presents at best evidence of negligence, which does not suffice to state a claim for breach of the implied duty of good faith and fair dealing.

### D.

The Granellis further contend that the District Court erred in holding that they could not make out a claim under the theory of detrimental reliance based on Chicago Title's alleged representation that it would search the title on their behalf at the time of

---

[5] As a part of their duty of good faith and fair dealing claim, Appellants also allege that certain of Chicago Title's claims handlers who worked on the their claim "failed to investigate" the claim and "failed to take any action." (Appellant's Br. 22) The Granellis provide no record citation or evidence in support of these assertions. Therefore, they do not suffice to create a genuine dispute as to Defendant's good faith. *See Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (non-movant cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to defeat summary judgment).

11

purchase. Detrimental reliance "is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *State v. Kouvatas,* 678 A.2d 1178, 1182 (N.J. Super. Ct. App. Div. 1996). To make out a claim for detrimental reliance, a plaintiff must show that defendant made a representation, had knowledge that plaintiff was acting on the basis of that representation, and that plaintiff relied to their detriment on that representation. *Id.*

As discussed in *Section III.A, supra*, the Granellis have not pointed to any evidence in the record that would establish that the terms of the title insurance policy included a representation that Chicago Title would search title on their behalf or provide them with an abstract of title. Therefore, the Granellis have not shown that Chicago Title made a representation that would form the prerequisite for a claim of detrimental reliance. The District Court thus did not err in dismissing the detrimental reliance claim at summary judgment.

E.

Finally, the Granellis contend that Chicago Title violated the New Jersey Consumer Fraud Act ("NJCFA"). Under the NJCFA, "unlawful practice" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…

12

N.J. Stat. Ann. § 56:8-2 (West 1976). The Granellis argue that Chicago Title violated the NJCFA by inducing Jacqueline Granelli to purchase the title policy by misrepresenting its scope of coverage, leading to the Granellis' "mistaken belief that the title policy would insure good and marketable title." (Appellant's Br. 28).

"New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act." *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998). The New Jersey Supreme Court, however, has allowed that "[NJCFA's] language is ample enough to encompass the *sale* of insurance policies as goods and services that are marketed to consumers." *Lemelledo v. Beneficial Mgmt. Corp. of America*, 696 A.2d 546, 551 (N.J. 1997) (emphasis added).

Again, as discussed in *Section III.A, supra*, the Granellis have not pointed to any record evidence that indicates Chicago Title fraudulently misrepresented the terms of the policy at the time of the sale by manifesting an intention to act as a title searcher or provide the Granellis with an abstract of title. To the extent the Granellis' NJCFA claim is premised upon Chicago Title's lack of diligence in bringing a quiet title action, such a claim is also not actionable under the NJCFA, as it does not pertain to the "sale or advertisement" of the policy. *See* N.J. Stat. Ann. § 56:8-2 (West 1976). Moreover, as discussed in *Section III.C., supra*, the Granellis have only introduced evidence creating a genuine dispute as to whether Chicago Title was *negligent* in its efforts to cure the title defect. The record does not support an inference of fraudulent intent in Chicago Title's handling of the claim. Therefore, the District Court did not err in dismissing Appellants' NJCFA claims at summary judgment.

13

IV.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment to Chicago Title on the Granellis' claim that Chicago Title failed to resolve their title defects in a reasonably prompt manner, and affirm the District Court's rulings as to the remainder of the Granellis' claims.